Cite as 2019 Ark. App. 344

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-19-61

| | |
|---|---|
| WAL-MART ASSOCIATES, INC., AND CLAIMS MANAGEMENT, INC. APPELLANTS<br><br>V.<br><br>DONALD ELLIS APPELLEE | **Opinion Delivered** August 28, 2019<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G601786]<br><br><br>AFFIRMED |

**N. MARK KLAPPENBACH, Judge**

Appellants Wal-Mart Associates, Inc., and Claims Management, Inc. (Wal-Mart), appeal the order of the Arkansas Workers' Compensation Commission awarding appellee Donald Ellis additional medical treatment. Wal-Mart argues on appeal that substantial evidence does not support the Commission's findings. We affirm.

A hearing was held before the administrative law judge (ALJ) on February 1, 2018, concerning Ellis's entitlement to additional medical treatment for a potential diagnosis of complex regional pain syndrome (CRPS) subsequent to his admittedly compensable injury. Ellis suffered a right distal-biceps-tendon rupture while loading a truck for Wal-Mart on February 1, 2016. Dr. Jeff Johnson performed surgery to repair the tear, and Ellis thereafter participated in physical therapy and continued to see Dr. Johnson. In November 2016, a second MRI was performed that revealed a re-rupture of the biceps tendon and led to a second surgery by Dr. Johnson.

Dr. Michael Moore performed an independent medical examination of Ellis on May 4, 2017, and authored an extensive report. Among Dr. Moore's diagnoses was that Ellis was possibly suffering from CRPS based on the swelling, discoloration, and sweating Ellis had experienced in his hand. Dr. Moore recommended that Ellis undergo further evaluation and treatment for this possible diagnosis, specifically a triphasic bone scan to determine whether there was any objective evidence of CRPS. On June 14, 2017, Ellis again saw Dr. Johnson, who observed a slight purplish discoloration of Ellis's arm and noted that he possibly had CRPS in addition to a partial tear of his distal biceps. Subsequent to this visit with Dr. Johnson, Wal-Mart conducted surveillance on Ellis and made a video of him doing various activities on June 30 and July 1. After viewing the video, Dr. Johnson wrote a letter stating, in part, as follows:

> I am extraordinarily surprised by the degree of use of his right [arm] that Mr. Ellis demonstrates in the video given the fact that in the office he would not shake hands the last several visits and would grimace as he moved his elbow. In the video, he does such activities as chopping brush around a trailer with a machete and an ax, lifting a pop-up camper, shaking hands with individuals, opening and closing car doors and carrying various items. Certainly, as he reported to me that he was unable to use his right arm whatsoever because of pain, I again am surprised by this activity noted on the videos. Furthermore, if he was in fact doing any sort of forcible activity with his arm, this certainly would contribute to his inability for the biceps to heal. While he reported that he was not doing such activities and we had decreased his work load significantly after the re-repair, he also reported to me that he was unable to use his arm which in the videos is apparently not what he is able to do now.

Dr. Carlos Roman, who did not examine Ellis, gave his written opinion after reviewing the medical records and surveillance video that based on the use of his arm in the video, Ellis did not have any symptoms of CRPS.

Ellis testified that since his second surgery, he had experienced nerve pain and other symptoms in his arm that he did not suffer from after the first surgery. These symptoms

2

varied and included a "tingly ant-bite feeling," a burning sensation, a feeling "like a cold cup of water has been poured on the inside of your arm," as well as swelling, sweating, cramping, and changes in color. He said that the pain level and symptoms varied from day to day and that sometimes his arm was "perfectly fine" and sometimes it was "awful." On a good day he could do most things he did before the injury. Ellis acknowledged that the surveillance video showed him cutting brush with an ax and a machete, using a saw, and helping move an appliance. He said that his arm was not hurting that day and although he may have been foolhardy, he was doing the work for his ill sister so she would not be cited by the city. Ellis said that on June 14, the day of his previous visit with Dr. Johnson, his arm was agitated, swollen, and discolored, and he did not shake hands in that state because it hurt to touch.

Darin Bell was Ellis's occupational therapist after both surgeries and testified that Ellis was very motivated. Bell said that after the second surgery, Ellis had quite a bit of pain, decreased motion, and burning. Bell also observed lots of swelling in his hand as well as changes in the hair on Ellis's arm and changes in the color of his arm.

The ALJ found that Ellis had proved by a preponderance of the evidence that the additional medical treatment recommended by Dr. Moore was reasonable and necessary. The Commission affirmed and adopted the opinion of the ALJ, thereby making the ALJ's findings and conclusions the findings and conclusions of the Commission. *White v. Butterball, LLC*, 2018 Ark. App. 7, 538 S.W.3d 240. In reviewing decisions from the Arkansas Workers' Compensation Commission, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's

3

decision and affirms if that decision is supported by substantial evidence. *Sea Ark Marine, Inc. v. Pippinger*, 2010 Ark. App. 13. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the reviewing court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, we must affirm the decision. *Id.*

Arkansas Code Annotated section 11-9-508(a) (Supp. 2017) requires an employer to promptly provide for an injured employee such medical treatment "as may be reasonably necessary in connection with the injury received by the employee." What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *Univ. of Ark. Pub. Emp. Claims Div. v. Tocci*, 2015 Ark. App. 505, 471 S.W.3d 218. We defer to the Commission's findings on what testimony it deems credible, and the resolution of conflicting evidence is a question of fact for the Commission. *Id.* The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Id.*

Wal-Mart argues that based on the surveillance video and the reports of Dr. Johnson and Dr. Roman, Ellis has no credibility and substantial evidence does not support the Commission's findings. Wal-Mart disputes the ALJ's and the Commission's characterization of the video as depicting Ellis performing daily activities as well as cleaning and cutting brush; instead, it claims that Ellis was performing heavy manual labor when he used a pressure washer at a car wash, assisted in moving a small washer and dryer, and cleared brush. Wal-Mart further argues that because Dr. Moore did not have access to the video when he

4

gave his recommendation, his opinion was not based on the entire set of facts and does not constitute substantial evidence. Ellis argues that the fact that he had some good days as demonstrated by his actions on the video does not mean that he was untruthful or that he was without pain or injury.

Although the Commission reviewed the surveillance video and the physicians' responses, it assigned the greater weight of the evidence to Dr. Moore's report. It credited Ellis's testimony and the medical records in finding that Ellis continued to have issues with his arm and had good and bad days. It is the Commission's duty to make credibility determinations, to weigh the evidence, and to resolve conflicts in the medical testimony and evidence. *Tocci*, *supra*. While the video does depict Ellis using his right arm, he explained in his testimony that his symptoms varied from day to day and that his arm was not hurting on the day he was videoed working. Dr. Moore's diagnosis of potential CRPS was not based on Ellis's ability to use his arm day to day but was instead based on the symptoms of swelling, discoloration, and sweating in his right hand. These symptoms had been observed by Ellis's physical therapist and by Dr. Johnson. We hold that this constitutes substantial evidence to support the Commission's award of additional medical treatment.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Bassett Law Firm LLP*, by: *Curtis L. Nebben*, for appellants.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellee.